******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# SHANE J. CARPENTER *v.* BRADLEY J. DAAR ET AL.
## (SC 20524)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Kahn and Ecker, Js.

*Syllabus*

Pursuant to statute (§ 52-190a (a)), a complaint sounding in medical malprac-
tice must be accompanied by a good faith certificate and "a written and
signed opinion of a similar health care provider, as defined in section
52-184c . . . that there appears to be evidence of medical negligence
and includes a detailed basis for the formation of such opinion."

The plaintiff sought to recover damages from the named defendant, D, a
dentist, and D's practice, P Co., for malpractice in connection with a
root canal surgery D performed on the plaintiff. The plaintiff alleged
that, during the surgery, D negligently failed to diagnose and treat an
infection in the plaintiff's tooth and that, as a result, the plaintiff suffered
a serious infection that required additional medical care, surgery, and
dental treatment. The plaintiff attached to his complaint a good faith
certificate and an opinion letter from S, an endodontist, along with a
description of S's credentials in endodontics. In his complaint, the plain-
tiff alleged that S was a "similar health care provider," as defined by
statute (§ 52-184c (c)), to D, who the plaintiff alleged had held himself
out as a specialist in endodontics. In support of that allegation, the
plaintiff quoted text from P Co.'s website indicating that D had completed
hundreds of hours in training in endodontics, which the website
described as dealing with tissues and structures inside the tooth. The
defendants moved to dismiss the action on the ground that the opinion
letter did not comply with §§ 52-190a (a) and 52-184c insofar as it failed
to establish that S was a "similar health care provider" to D, who was
a general dentist and not a specialist in endodontics. The defendants
asserted that S was not a "similar health care provider" under the
definition of that term in § 52-184c (c) because D was not a specialist
in endodontics and did not hold himself out to be one, or the definition
of that term in § 52-184c (b), which applies to nonspecialists, because
D was a practitioner of general dentistry and S had not practiced or
taught general dentistry within the five years preceding the date of the
incident giving rise to the plaintiff's claim. The defendants attached to
their motion an affidavit from D, in which he attested that he is a general
dentist and not a specialist in endodontics or holding himself out as
such a specialist. The plaintiff objected to the motion to dismiss and
reiterated the claim made in his complaint that D had held himself out
to be a specialist in endodontics and that S was therefore a similar
health care provider under § 52-184c (c). The plaintiff did not dispute
the facts set forth in D's affidavit, and, rather than request leave to
amend his complaint to attach a new or amended opinion letter, the
plaintiff attempted to cure the allegedly defective opinion letter by sub-
mitting, as an exhibit to his objection to the motion to dismiss, a supple-
mental affidavit in which S further elaborated on his credentials. The
trial court granted the motion to dismiss and rendered judgment for the
defendants. The court concluded that, because the plaintiff had not
disputed the facts in D's affidavit, the court was not required to conclu-
sively presume the validity of the allegations in the complaint. The trial
court also concluded that D was not a specialist, as that term was
defined in § 52-184c (c), and, therefore, any opinion from a similar health
care provider was required to come from a general dentist. In addition,
the trial court rejected the plaintiff's alternative argument that S was
qualified as a similar health care provider under the nonspecialist defini-
tion in § 52-184c (b). The Appellate Court affirmed the trial court's
judgment, relying in part on *Morgan* v. *Hartford Hospital* (301 Conn.
388), which held that the failure to timely file a motion to dismiss,
pursuant to § 52-190a (c), waives any objection to the adequacy of the
opinion letter and that the opinion letter implicates the court's personal

jurisdiction for purposes of the procedures governing the motion to dismiss. The Appellate Court reasoned that, because the opinion letter is a part of civil process for purposes of obtaining personal jurisdiction, the plaintiff could not cure any deficiencies in the purportedly defective opinion letter by way of a supplemental affidavit but, instead, was required to amend his complaint. The Appellate Court also agreed that the opinion letter itself did not contain sufficient information to demonstrate that S was a similar health care provider to D under § 52-184c (c) because D's affidavit indicated that D was a general dentist and that he performed the root canal in that capacity, rejecting the plaintiff's reliance on the statements on P Co.'s website about D's training in endodontics. In addition, the Appellate Court determined that the opinion letter did not establish that S was a similar health care provider to D under § 52-184c (b) and affirmed the trial court's judgment, from which the plaintiff, on the granting of certification, appealed to this court. *Held*:

1. This court determined that *Morgan* was incorrectly decided and, accordingly, overruled *Morgan* to the extent that it held that the opinion letter required by § 52-190a implicates a court's personal jurisdiction:

   a. Nothing in the text or legislative history of § 52-190a suggested that the legislature contemplated that the opinion letter would affect a court's personal jurisdiction over a defendant:

   The legislature's failure to use terms pertaining to jurisdiction, service, or process in subsection (c) of § 52-190a, which provides that dismissal is the remedy for failing to comply with the statute's opinion letter requirement, was strong textual evidence that the legislature did not intend for the opinion letter and good faith certificate to implicate a court's personal jurisdiction, especially when the legislature uses such terms in other statutes governing personal jurisdiction and the service of process in a wide variety of contexts.

   Nothing in the legislative history of § 52-190a supported the conclusion that the statute implicates a court's personal jurisdiction, as that history demonstrated that the opinion letter requirement, enforced by way of a motion to dismiss, was intended to prevent frivolous medical malpractice actions by addressing the perceived problem that attorneys were misrepresenting the extent to which a factual basis existed for their good faith in bringing those actions, not to serve as a sword to defeat otherwise facially meritorious claims, and it also indicated that it was understood that any dismissal under the statute was to be without prejudice.

   Moreover, in *Morgan*, this court relied on a false logical premise insofar as it assumed that, because this court previously had held that the good faith certificate did not implicate a court's subject matter jurisdiction, dismissal under § 52-190a necessarily related to a court's personal jurisdiction, as it failed to account for the numerous nonjurisdictional grounds on which a court may dismiss a malpractice case.

   b. The doctrine of stare decisis did not counsel against overruling the holding in *Morgan* that the opinion letter required by § 52-190a implicates a court's personal jurisdiction:

   There was not a strong case that the legislature had acquiesced in the construction of § 52-190a (a) expressed in *Morgan* because, in the more than eleven years since this court decided that case, the legislature had made only a single, minor amendment to § 52-190a, and that amendment was to a different subsection of the statute and was not germane to the opinion letter requirement.

   Moreover, developments in the law since *Morgan* justified this court's departure from precedent and illustrated the extent to which the court's holding as to personal jurisdiction had led to results that were at odds with the legislature's intent in enacting § 52-190a, as *Morgan* elevated the credentials of the opinion letter's author to a jurisdictional prerequisite and spawned a body of case law that imposed substantially greater burdens on plaintiffs than the legislature intended by allowing potentially curable, technical, prelitigation defects to defeat otherwise meritorious medical malpractice actions, sometimes after several years of litigation.

   c. This court clarified that the rules of practice (§§ 10-30 and 10-31) governing motions to dismiss in civil matters and case law governing

the pleading and proof of jurisdictional facts are not applicable to motions to dismiss filed under § 52-190a (c), the inquiry under § 52-190a is solely framed by the allegations in the complaint, the only question at the motion to dismiss stage is whether the author of the opinion letter is a similar health care provider to the defendant, in view of their respective qualifications as pleaded in the complaint and described in the opinion letter, to the extent that the opinion letter is legally insufficient or defective under § 52-190a, trial courts retain the authority to permit amendments to or supplementation of a challenged letter in response to a motion to dismiss, and this court's holding in *Morgan* that a motion to dismiss for failure to file an opinion letter pursuant to § 52-190a is waivable, including by inaction, remained good law.

2. The Appellate Court incorrectly concluded that the allegations in the plaintiff's complaint and the attached opinion letter were legally insufficient to establish that S was a similar health care provider to D within the meaning of § 52-184c (c), and, accordingly, that court improperly upheld the trial court's granting of the defendants' motion to dismiss:

Although the complaint did not use certain talismanic words to indicate that D was board certified or specialized in endodontics, a broad and realistic reading of the allegations in the complaint, including that D "held himself out as a practitioner" in the field of endodontics and the quoted language from P Co.'s website, as well as the opinion letter's recitation of S's board certification and extensive credentials as a practitioner and professor of endodontics, supported the conclusion that S was a "similar health care provider" to D, as that term was intended by the legislature when it amended § 52-190a to ensure that there are nonfrivolous factual bases for malpractice claims brought in this state's courts.

Argued May 2, 2022—officially released February 1, 2023*

*Procedural History*

Action to recover damages for the defendants' alleged medical malpractice, brought to the Superior Court in the judicial district of Middlesex, where the court, *Domnarski, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to the Appellate Court, *Keller, Elgo* and *Pellegrino, Js.*, which affirmed the trial court's judgment, and the plaintiff, on the granting of certification, appealed to this court. *Reversed*; *further proceedings*.

*Kyle J. Zrenda*, with whom was *Theodore W. Heiser*, for the appellant (plaintiff).

*Beverly Knapp Anderson*, for the appellees (defendants).

*Alinor C. Sterling*, *Jeffrey W. Wisner*, and *Sarah Steinfeld* filed a brief for the Connecticut Trial Lawyers Association as amicus curiae.

*Liam M. West* and *Ryan T. Daly* filed a brief for the Connecticut Defense Lawyers Association as amicus curiae.

*Opinion*

ROBINSON, C. J. This certified appeal requires us to consider the extent to which our case law, most significantly, *Morgan* v. *Hartford Hospital*, 301 Conn. 388, 21 A.3d 451 (2011), has resulted in the deviation of Connecticut's good faith opinion letter statute, General Statutes § 52-190a,[1] from the legislature's intention that it "prevent frivolous [medical] malpractice actions" but not "serve as a sword to defeat otherwise facially meritorious claims." *Wilkins* v. *Connecticut Childbirth & Women's Center*, 314 Conn. 709, 736 n.9, 104 A.3d 671 (2014). The plaintiff, Shane J. Carpenter, appeals, upon our grant of his petition for certification,[2] from the judgment of the Appellate Court upholding the dismissal of his dental malpractice action against the defendants, Bradley J. Daar and his business entity, Shoreline Modern Dental, LLC (Shoreline). *Carpenter* v. *Daar*, 199 Conn. App. 367, 369–70, 405, 236 A.3d 239 (2020). On appeal, the plaintiff claims that the Appellate Court incorrectly concluded that (1) because the opinion letter implicates the court's personal jurisdiction, the trial court should not have considered an affidavit filed by the plaintiff to supplement a potentially defective opinion letter (supplemental affidavit) as an alternative to amending the operative complaint, and (2) the author of the opinion letter, Charles S. Solomon,[3] an endodontist, was not a "similar health care provider," as defined by General Statutes § 52-184c,[4] to Daar, who is a general dentist. Our review of the plaintiff's claims leads us to confront a more fundamental issue under § 52-190a, namely, whether this court correctly concluded in *Morgan* that the opinion letter requirement implicates the court's personal jurisdiction for purposes of the procedures attendant to the motion to dismiss. See *Morgan* v. *Hartford Hospital*, supra, 401–402. Having received supplemental briefing on this issue; see footnote 2 of this opinion; we conclude that *Morgan* was wrongly decided on this point. We now hold that the opinion letter requirement is a unique, statutory procedural device that does not implicate the court's jurisdiction in any way. We further conclude that, consistent with this court's decision in *Bennett* v. *New Milford Hospital, Inc.*, 300 Conn. 1, 12 A.3d 865 (2011), for purposes of the motion to dismiss pursuant to § 52-190a (c), the sufficiency of the opinion letter is to be determined solely on the basis of the allegations in the complaint and on the face of the opinion letter, without resort to the jurisdictional fact-finding process articulated in, for example, *Conboy* v. *State*, 292 Conn. 642, 651–52, 974 A.2d 669 (2009). Because the opinion letter in the present case established that Solomon was a similar health care provider to Daar under the broadly and realistically read allegations in the complaint, we conclude that the plaintiff's action should not have been dismissed. Accordingly, we reverse the judgment of the Appellate Court.

We briefly summarize the facts and procedural history of this case, much of which is aptly described in the opinion of the Appellate Court.[5] "On February 21, 2018, the plaintiff commenced the present action against the defendants[6] . . . . As to dental malpractice, the plaintiff alleged that, on June 16, 2015, during root canal surgery, Daar negligently failed to diagnose and treat an infection in the plaintiff's tooth and that, as a result, the plaintiff suffered an infection in his mouth, throat, face and neck that required additional emergency medical care, hospitalization, oral and neck surgery and continuing dental treatment. The plaintiff named Shoreline as a defendant on the basis of vicarious liability for Daar's negligent treatment.

"Pursuant to § 52-184c (c), the plaintiff further alleged that Daar held himself out as a specialist in endodontics on Shoreline's website by indicating that he had completed hundreds of hours of training in endodontics and by providing a general explanation of the nature of that dental specialty.

"The plaintiff attached to his complaint a good faith certificate and what he alleged in the complaint to be a 'written and signed opinion from a similar health care provider stating that there appears to be evidence of negligence by the defendants, a violation of the standard of care, and providing [a] detailed basis for the formation of that opinion, along with a supplemental correspondence outlining that similar health care provider's qualifications.' . . . The 'supplemental correspondence' attached to the complaint, dated August 10, 2017, contained information regarding Solomon's qualifications to establish that he was a similar health care provider to Daar.[7] The supplemental correspondence, also authored by Solomon, indicated that he is a graduate of Columbia University College of Dental Medicine (Columbia), had been licensed to practice dentistry in the state of New York, 'with credentials that would satisfy the requirement of any other state,' and received his 'specialty [b]oards in [e]ndodontics' in 1970. It also stated that Solomon practiced endodontics in New York for more than forty years, and that for the past eight years he has been a full-time clinical professor of endodontics at Columbia, 'teaching clinical and didactic [e]ndodontics.' " (Citation omitted; footnote added; footnote altered.) *Carpenter* v. *Daar*, supra, 199 Conn. App. 370–72.

"On April 5, 2018, the defendants moved to dismiss the present action on the ground that the opinion letter did not comply with §§ 52-190a (a) and 52-184c because it failed to demonstrate that Solomon is a similar health care provider to Daar, who is a general dentist, not a specialist in endodontics. They argued that, as an endodontist, Solomon is not a similar health care provider under § 52-184c (b) because Daar is not a specialist in endodontics and was not holding himself out to be one.

They further argued that Solomon also was not a similar health care provider under § 52-184c (c) because Daar is a practitioner of general dentistry and Solomon had not practiced or taught general dentistry within the five years preceding June 16, 2017 [i.e., the date of the incident giving rise to the claim]. In addition to submitting a memorandum of law in support of the motion to dismiss, the defendants attached an affidavit from Daar with other related exhibits.

"In his affidavit, Daar attested that he is a general dentist and has been licensed by the state of Connecticut to practice dentistry since November, 1982. He indicated that, as a general dentist, he provides such services as fillings, inlay and onlays, crowns and bridges, dentures, veneers, root canal treatments, simple extractions, teeth whitening, certain types of orthodontics, mouth guards, and some periodontal treatments. Daar stated that he performed the root canal treatment on the plaintiff's tooth in 2015 in his capacity as a general dentist. He further indicated that a quotation from Shoreline's website, on which the plaintiff relied in his complaint to support his allegations that Daar was holding himself out as a specialist in endodontics, was only a partial excerpt of a sentence, which stated in full: '[Daar] has completed hundreds of hours of training in [e]ndodontics, [o]rthodontics, [p]eriodontics, [d]ental [i]mplants, [s]leep [a]pnea and more.'

"In support of his allegation that Daar held himself out to be a specialist in endodontics, the plaintiff also relied on information found on the website related to Daar's practice, in particular, information related to endodontics that was accessed in a portion of the website related to 'Patient Education' and 'Services.' In his affidavit, Daar attested that, in the same portion of the website, eleven additional links appeared. These included links to the following subjects: educational videos, cosmetic and general dentistry, emergency care, implant dentistry, oral health, oral hygiene, oral surgery, orthodontics, pediatric dentistry, periodontal therapy and technology.

"The plaintiff filed an objection to the motion to dismiss on June 5, 2018. The plaintiff continued to argue that, as alleged in his complaint and on the basis of the statements on Shoreline's website, Daar had held himself out to be a specialist in endodontics, and, thus, Solomon, a specialist in endodontics, was a similar health care provider to Daar pursuant to § 52-184c (c). The plaintiff did not submit any evidence to dispute the facts set forth in Daar's affidavit, which sought to establish that, at the time of the root canal procedure, Daar was a general dentist, not a specialist in endodontics or someone holding himself out to be a specialist in endodontics. The plaintiff did not request leave to amend his complaint [pursuant to Practice Book § 10-

60] to attach a new or amended opinion letter. Instead, the plaintiff attempted to cure the alleged defects in the opinion letter, which the defendants claimed mandated a dismissal, by submitting, as an exhibit to his objection to the motion to dismiss, [the] supplemental affidavit, executed by Solomon on May 30, 2018, which further elaborated on his qualifications as a similar health care provider. In his supplemental affidavit, Solomon attested in relevant part that he is a clinical professor of dentistry at Columbia, served as the Director of the Division of Endodontics from 2009 and continued in that position to 2017, is a Diplomate of the American Board of Endodontics, past President of the New York Section of the American College of Dentists and past President of the New York Academy of Dentistry. He further attested that (1) he teaches both undergraduate and postgraduate students in endodontics at Columbia and that his 'lectures to undergraduate students involve general dentistry and the performance of endodontic procedures, including root canals, by general dentists'; (2) '[t]he present case involves an endodontic procedure performed by a general dentist'; (3) 'the proper standards, procedures, and care to be followed is the subject of my teaching to undergraduate dental students and has been for more than the last five years'; and (4) '[t]he standard of care with respect to the treatment provided by a general dentist in the scenario presented in this case and an endodontist is the same.'

"The plaintiff did not withdraw the allegation in his complaint that, he maintained, alleged that Daar held himself out to be a specialist. On the basis of the opinion letter, alone or together with the supplemental affidavit, the plaintiff argued that, even if Daar is a nonspecialist, Solomon is a similar health care provider to Daar because, pursuant to § 52-184c (b), Solomon's teaching involved instruction in endodontics as it pertains to the practice of general dentistry, specifically relevant to root canals, during the requisite five year period." (Footnotes omitted.) Id., 372–75.

Following oral argument, the trial court issued a memorandum of decision and granted the defendants' motion to dismiss. See id., 376–78. "The [trial] court . . . analyzed the sufficiency of the opinion letter as amended by the filing of the supplemental affidavit."[8] Id., 376. The trial court determined that the allegations in the complaint rendered applicable "the nonspecialist definition in subsection (b) of § 52-184c, rather than the specialist definition in subsection (c), as alleged by the plaintiff in his complaint." Id., 377. Citing *Labissoniere* v. *Gaylord Hospital, Inc.*, 182 Conn. App. 445, 453, 185 A.3d 680 (2018), the trial court observed that "the plaintiff had not provided an affidavit disputing the facts contained in the defendants' affidavit in support of their motion to dismiss and that, under such circumstances, the court 'need not conclusively presume the validity of the allegations in the complaint.' The court

concluded that Daar was not a specialist as that term is defined in § 52-184c (c), and therefore any opinion from a similar health care provider must come from a general dentist." *Carpenter* v. *Daar*, supra, 199 Conn. App. 377. After "reject[ing] the plaintiff's alternative argument that Solomon was qualified as a similar health care provider under the nonspecialist definition in § 52-184c (b)"; id.; the trial "court granted the motion to dismiss as to Daar. Because the alleged liability of Shoreline was derivative of the cause of action brought against Daar, the court . . . granted the motion as to that defendant as well, and rendered judgment in favor of both defendants." Id., 378.

The plaintiff appealed from the judgment of dismissal to the Appellate Court. Id., 369, 378. On appeal, the plaintiff claimed that the trial court incorrectly "determin[ed] that his certificate of good faith, specifically, the accompanying opinion letter, as supplemented by [the supplemental affidavit], failed to meet the requirements of . . . § 52-190a because the author of the opinion letter and supplemental affidavit, [Solomon], was not a 'similar health care provider' as defined in . . . § 52-184c." Id., 369. The Appellate Court decided the case on the basis of two "interrelated," alternative grounds for affirmance raised by the defendants. Id., 389; see id., 405. Specifically, the Appellate Court "agree[d] with the defendants' first alternative ground for affirmance that the plaintiff, in lieu of amending his complaint, [could not] cure a § 52-190a (a) defect in the opinion letter attached to the complaint with information contained in a subsequently filed supplemental affidavit of the opinion author [when] the plaintiff continue[d] to maintain that his complaint properly alleged that Daar was 'holding himself out as a specialist,' and the supplemental affidavit attempted to provide information that allegedly qualified Solomon as a 'similar health care provider' pursuant to the nonspecialist definition set forth in § 52-184c (b)." Id., 389–90. On this point, the Appellate Court emphasized that this court's decision in *Morgan* v. *Hartford Hospital*, supra, 301 Conn. 388, rendered the "opinion letter . . . part of civil process" for purposes of obtaining personal jurisdiction; *Carpenter* v. *Daar*, supra, 199 Conn. App. 399; and followed its decision in *Gonzales* v. *Langdon*, 161 Conn. App. 497, 517–19, 128 A.3d 562 (2015), in agreeing with the defendants' argument that the plaintiff could not use the supplemental affidavit to cure the deficiencies in the process. See *Carpenter* v. *Daar*, supra, 398–403. Considering the amendment procedures set forth in Practice Book §§ 10-59 and 10-60, the Appellate Court reasoned that the "essentially unrestricted" filing of the supplemental affidavit "avoids the limitations a court must consider before it allows the filing of an amendment to a complaint." Id., 403; see id., 404 (noting that § 52-190a does "not include any savings clause relative to defective opinion letters, which suggests that the statu-

tory requirements must be more strictly construed").

Second, the Appellate Court agreed with the defendants' argument that "the opinion letter attached to the complaint did not contain sufficient information to demonstrate that Solomon is a similar health care provider to Daar under the specialist definition of a similar health care provider in § 52-184c (c)," meaning that the Appellate Court "necessarily address[ed] and disagree[d] with the plaintiff's claim that the [trial] court erred in determining that the author of the opinion letter was not a similar health care provider as defined in § 52-184c (c)." Id., 390. The Appellate Court observed that "the affidavit of Daar submitted in connection with the defendants' motion to dismiss supported the conclusion that he is a general dentist and that the root canal treatment he performed on the plaintiff was performed in his capacity as a general dentist." Id., 392. The Appellate Court rejected the plaintiff's reliance on the " 'hundreds of hours' [of] training" in endodontics as "alleged to be stated on Daar's website" because "it [could not] be specifically determined from this promotional website the exact amount of hours of training [Daar] may have had in endodontics. The allegation that there is a statement on the website that Daar completed hundreds of hours of training in endodontics does not support a finding that Daar held himself out as an endodontic specialist. The website actually states that Daar 'has completed hundreds of hours of training' in many subjects. There is a distinction between a general dentist's training and experience, including continuing education and a postdoctoral specialty residency program required to become a specialist in a recognized dental specialty."[9] Id., 392–93. Thus, the Appellate Court "conclude[d] that the defendants' informative and promotional website references did not equate to Daar's holding himself out as a specialist in endodontics."[10] Id., 394. The Appellate Court then determined that the opinion letter did not establish that Solomon was a similar health care provider to Daar under § 52-184c (b) because it established that Solomon "taught endodontics for the past eight years" but did not "demonstrat[e] that [Solomon] had any active involvement in the practice or teaching of *general dentistry* during the requisite five year period." (Emphasis in original.) Id., 396.

On the basis of these conclusions, the Appellate Court affirmed the trial court's judgment dismissing the complaint. Id., 405. This certified appeal followed. See footnote 2 of this opinion.

On appeal, the plaintiff claims that the Appellate Court improperly upheld the dismissal of his action for lack of personal jurisdiction. He contends that the opinion letter was legally sufficient under § 52-190a because the "contents of the complaint adequately allege that . . . Daar held himself out as a specialist endodontist . . . Daar's affidavit failed to adequately

refute those allegations, and the opinion letter establishes that . . . Solomon," himself a professor of endodontics, "is a similar health care provider to an endodontic specialist." In response, the defendants contend that the Appellate Court properly relied on Daar's affidavit to establish that the plaintiff selected the wrong health care provider to author the opinion letter because Daar is—as a factual matter—a general dentist and not an endodontist.[11]

Our review of a trial court's decision to grant a motion to dismiss pursuant to § 52-190a is plenary. See, e.g., *Wilkins* v. *Connecticut Childbirth & Women's Center*, supra, 314 Conn. 718.

I

WHETHER THE *CONBOY* JURISDICTIONAL FACT ANALYSIS IS APPLICABLE TO THE § 52-190a INQUIRY

The defendants' arguments, which rely in substantial part on factual claims that go beyond the allegations on the face of the complaint and the opinion letter, beg the question whether the well established jurisdictional fact analysis implementing Practice Book §§ 10-30 and 10-31, as articulated in *Conboy* v. *State*, supra, 292 Conn. 651–52[12] applies in the context of conducting the similar health care provider inquiry under § 52-190a. See *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983) (observing that "a determination of whether sufficient minimum contacts with Connecticut exist is a fact question" in concluding that due process requires "a trial-like" evidentiary hearing when "issues of fact are necessary to the determination of a court's jurisdiction"). Thus, with the aid of supplemental briefs submitted by the parties and the amicus curiae, the Connecticut Trial Lawyers Association (trial lawyers); see footnote 2 of this opinion; we consider, as a threshold matter, the extent to which the opinion letter requirement is jurisdictional in nature. This inquiry raises the question of the continuing vitality of this court's decision in *Morgan* v. *Hartford Hospital*, supra, 301 Conn. 401–402, in which this court held that, pursuant to Practice Book § 10-32,[13] the failure to file a timely motion to dismiss waives any objection to the adequacy of the opinion letter.

A

Review of *Morgan*

In concluding in *Morgan* that the failure to file a timely motion to dismiss waives any objection to the adequacy of the opinion letter, this court held that the opinion letter affects personal jurisdiction. See *Morgan* v. *Hartford Hospital*, supra, 301 Conn. 401–402. This court determined that the opinion letter necessarily implicated personal jurisdiction, given its previous con-

clusion in *LeConche* v. *Elligers*, 215 Conn. 701, 702–703, 714, 579 A.2d 1 (1990), that the good faith certificate requirement, later supplemented by the opinion letter, is not subject matter jurisdictional.[14] See *Morgan* v. *Hartford Hospital*, supra, 397–98. This court observed "that the written opinion letter, prepared in accordance with the dictates of § 52-190a, like the good faith certificate, is akin to a pleading that must be attached to the complaint in order to commence properly the action." Id., 398. The court also observed in *Morgan* that, in its then recent decision in *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 31, which had held that dismissal was the mandatory remedy for failure to comply with the opinion letter statute, this court had "cited favorably [to] *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, 113 Conn. App. 569, 583–84, 966 A.2d 813, cert. denied, 292 Conn. 911, 973 A.2d 661 (2009), in which the Appellate Court held that the failure to follow the statutory attachment requirements does not implicate a plaintiff's right to bring a medical malpractice action . . . [or] affect the court's power to hear such actions. Thus, the court in *Votre* concluded that such a failure does not implicate the subject matter jurisdiction of the court. . . . In *Votre*, the Appellate Court also held that a defendant may waive the statutory requirements of § 52-190a." (Citation omitted.) *Morgan* v. *Hartford Hospital*, supra, 398–99. In *Morgan*, however, the court went a step further and read *Votre*'s conclusion as to subject matter jurisdiction necessarily to "[support] the proposition that the failure to attach a sufficient written opinion letter of a similar health care provider involves *in personam* jurisdiction" because it is "fundamental that jurisdiction over a person can be obtained by waiver."[15] (Emphasis in original; internal quotation marks omitted.) Id., 399.

In *Morgan*, the court also observed that "the legislature did not establish a mandatory time limit in § 52-190a for the filing of a motion to dismiss. It did, however, establish a mandatory attachment to the complaint in the form of a written opinion letter from a similar health care provider. This certificate, therefore, serves as a precondition to effective service of process for the initiation of a medical malpractice action." Id., 400–401; see id., 402 ("constru[ing] the term 'process' to include . . . the summons, the complaint and any requisite attachments thereto"). The court then cited case law concerning the failure to establish personal jurisdiction because of noncompliance with statutory service requirements and stated: "Likewise, the attachment of the written opinion letter of a similar health care provider is a statutory prerequisite to filing an action for medical malpractice. The failure to provide a written opinion letter, or the attachment of a written opinion letter that does not comply with § 52-190a, constitutes insufficient process and, thus, service of that insufficient process does not subject the defendant to the jurisdiction of

the court."[16] Id., 401; see id., 402 ("[T]he failure to attach a proper written opinion letter pursuant to § 52-190a constitutes insufficient service of process and, therefore, Practice Book § 10-32 and its corresponding time and waiver rule [apply] by [their] very terms. Because we conclude that the absence of a proper written opinion letter is a matter of form, it implicates personal jurisdiction." (Footnote omitted.)).

## B

### Whether *Morgan* Was Correctly Decided

### 1

### Statutory Analysis of § 52-190a

In determining whether *Morgan* correctly concluded that the opinion letter required by § 52-190a implicates the court's personal jurisdiction, our analysis begins with the governing statutory text, as required by General Statutes § 1-2z.[17] Section 52-190a (a), which is set forth in footnote 1 of this opinion, provides in relevant part: "To show the existence of such good faith, the claimant or the claimant's attorney . . . shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate. The claimant or the claimant's attorney . . . shall retain the original written opinion and shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate. . . ." Subsection (c) of § 52-190a then provides: "The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action."

In reading the statute, we bear in mind that, doctrinally, personal jurisdiction relates to the court's authority to render judgment against a particular defendant who has been haled before it, such as by compliance with statutorily prescribed methods for serving process, consistent with constitutional due process guarantees.[18] See, e.g., *Argent Mortgage Co., LLC* v. *Huertas*, 288 Conn. 568, 576, 953 A.2d 868 (2008); *Lombard Bros., Inc.* v. *General Asset Management Co.*, 190 Conn. 245, 250, 460 A.2d 481 (1983); see also, e.g., *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 195–96, 629 A.2d 1116 (1993) ("[a]lthough the Superior Court has general subject matter jurisdiction . . . it may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction" (citations omitted)).

Nothing in the text of § 52-190a suggests that the legislature contemplated that the opinion letter would affect the court's personal jurisdiction over a defendant. The statute does not use terms pertaining to jurisdiction, service, or process when it provides in subsection (c) that dismissal is the remedy for failing to comply with the opinion letter requirement set forth in subsection (a). See General Statutes § 52-190a (c); see also *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 28 ("dismissal is the mandatory remedy" for failure "to file an opinion letter that complies with § 52-190a (a)"). As the plaintiff and the trial lawyers point out, the absence of jurisdictional language puts § 52-190a in stark contrast to other statutes governing personal jurisdiction and the service of process in a wide variety of contexts, including those, like § 52-190a, that are codified in title 52 of the General Statutes, which specifically concerns civil actions.[19] See, e.g., General Statutes § 52-45a ("[c]ivil actions shall be commenced by *legal process* consisting of a writ of summons or attachment," which "shall be accompanied by the plaintiff's complaint" (emphasis added)). In contrast to these other statutes, the absence of the terms "process," "service" or "personal jurisdiction" in § 52-190a is significant because we have described them as "express[ly]" implicating the court's "personal jurisdiction," insofar as "the legislature frequently employs the term 'service' when dictating the necessary procedures by which a court may gain jurisdiction over a person." *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 32–33, 848 A.2d 418 (2004); see id., 33 (concluding that 120 day period for commencement of apportionment action implicates personal jurisdiction, rather than subject matter jurisdiction, given multiple references to "the term 'service' "); *Commissioner of Transportation* v. *Kahn*, 262 Conn. 257, 273–74, 811 A.2d 693 (2003) (concluding that trial court's failure to provide notice to Commissioner of Transportation, as required by General Statutes § 13a-76, did not implicate court's personal jurisdiction over commissioner in condemnation proceeding because "absent from the statute is any reference to 'service' or 'process,' terms commonly used in our statutes to dictate the necessary procedure by which the court obtains jurisdiction over the person"); see also *Ahrens* v. *Hartford Florists' Supply, Inc.*, 198 Conn. App. 24, 38–40, 232 A.3d 1129 (2020) (concluding that General Statutes § 52-577a (b), setting forth procedure for third-party product liability claim, implicates court's personal jurisdiction because it provides particular procedure for service of process).

The legislature's failure to use the terms "personal jurisdiction" or "service of process" in § 52-190a, when it so readily uses those terms in other statutes in the same title governing civil actions, provides strong textual evidence that the legislature did not intend the opinion letter and good faith certificate to implicate

the court's personal jurisdiction. See, e.g., *Hartford/ Windsor Healthcare Properties, LLC* v. *Hartford*, 298 Conn. 191, 205, 3 A.3d 56 (2010); see also *Commissioner of Transportation* v. *Kahn*, supra, 262 Conn. 273 ("[i]n light of the frequency with which the legislature expressly employs such terms to dictate the means by which notice must be given, we presume from their absence that neither service of process nor an order of notice is required under the statute"). Although we find strong support in the text of § 52-190a indicating that the opinion letter and good faith certificate requirements do not implicate a court's personal jurisdiction, we nevertheless assume that this court's contrary interpretation of the statute in *Morgan* v. *Hartford Hospital*, supra, 301 Conn. 401–402, is reasonable for purposes of determining ambiguity in connection with the § 1-2z analysis. Accordingly, we now turn to extratextual sources, namely, the legislative history of § 52-190a. See, e.g., *Wilkins* v. *Connecticut Childbirth & Women's Center*, supra, 314 Conn. 718–19.

The legislative history of § 52-190a does not support *Morgan*'s construction of the statute as implicating the court's personal jurisdiction. The legislature added the opinion letter requirement to § 52-190a in 2005 as No. 05-275, § 2, of the 2005 Public Acts (P.A. 05-275), which was part of a comprehensive tort reform effort to address a perceived crisis resulting from skyrocketing medical malpractice insurance premiums in high-risk specialties, in part by deterring frivolous medical malpractice actions. See id., 728. Supporters of the opinion requirement letter viewed it, in the words of then Senator Andrew J. McDonald, as "mak[ing] substantial improvements" over the statute's existing good faith certification requirement[20] in the screening of frivolous medical malpractice actions because it would demand a detailed explanation of the requisite good faith basis for the medical malpractice action. 48 S. Proc., Pt. 14, 2005 Sess., p. 4411; see id., pp. 4410–11; see also *Wilkins* v. *Connecticut Childbirth & Women's Center*, supra, 314 Conn. 728–30. The opinion letter provision, with enforcement via a motion to dismiss, addressed the perceived problem that attorneys were misrepresenting—often " 'innocently' "—the extent to which a factual basis existed for their good faith in bringing the action. *Wilkins* v. *Connecticut Childbirth & Women's Center*, supra, 730.

The only legislative history concerning the nature of the dismissal for failure to provide a compliant opinion letter appears in an exchange during a Judiciary Committee hearing between Senator Edward Meyer and Attorney Michael D. Neubert, who spoke on behalf of the Connecticut State Medical Society in support of the bill. Attorney Neubert did not mention jurisdiction but, instead, confirmed his understanding that any dismissal would be *without* prejudice, given the lack of any express language in the bill stating that dismissal would

be *with* prejudice, although he did observe that "the [s]tatute of [l]imitations is always an issue." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 18, 2005 Sess., p. 5552. Significantly, he observed that it would be easy for plaintiffs to fix potentially noncompliant opinion letters, observing: "Let's say [someone] were to file a case. The letter doesn't state what he says it says and the court agrees . . . and dismisses it. I guess clearly he could have another bite at the apple and submit another complaint with another letter *or possibly respond by attaching the letter that met the requirements of the [s]tatute.*" (Emphasis added.) Id. In response to Senator Meyer's observation that the provision "doesn't have a lot of teeth," Attorney Neubert opined that this provision was envisioned as affecting only "the cases on the margins," in which "attorneys, based on their own judgment and maybe in good faith have misread what an expert's told them" about the merits of their case. Id., p. 5553.

Beyond its lack of support in the statutory text or the legislative history, *Morgan*'s conclusion that the opinion letter requirement implicates the court's personal jurisdiction also relies on a false logical premise. Specifically, *Morgan* assumed that, because, in *LeConche* v. *Elligers*, supra, 215 Conn. 702–703, 714, the court held that the good faith certificate was not subject matter jurisdictional, the dismissal provided by § 52-190a (c) *necessarily* had to relate to personal jurisdiction. See *Morgan* v. *Hartford Hospital*, supra, 301 Conn. 397–99. As the plaintiff and the trial lawyers observe, this either/or assumption fails to recognize that a case may be dismissed on nonjurisdictional grounds in a variety of situations, some of which implicate the merits of the case. For example, the legislature has made a "special motion to dismiss" available under certain circumstances to dispose of strategic lawsuits against public participation (SLAPP lawsuits). General Statutes § 52-196a (b); see, e.g., *Lafferty* v. *Jones*, 336 Conn. 332, 380–82, 246 A.3d 429 (2020), cert. denied,      U.S.      , 141 S. Ct. 2467, 209 L. Ed. 2d 529 (2021). It similarly fails to account for the concept of dismissal as a disciplinary sanction. See, e.g., *Ridgaway* v. *Mount Vernon Fire Ins. Co.*, 328 Conn. 60, 70–71, 176 A.3d 1167 (2018); *Millbrook Owners Assn., Inc.* v. *Hamilton Standard*, 257 Conn. 1, 16–17, 776 A.2d 1115 (2001); see also, e.g., General Statutes § 52-549t (b) (discretionary dismissal when party fails to appear before fact finder); Practice Book § 14-3 (dismissal for lack of diligence in prosecuting action). Indeed, numerous other examples of nonjurisdictional dismissals can be cited, such as certain prudential doctrines. See, e.g., Practice Book § 23-29 (providing for dismissal of habeas corpus actions on numerous substantive and jurisdictional grounds); *Durkin* v. *Intevac, Inc.*, 258 Conn. 454, 480, 782 A.2d 103 (2001) (forum non conveniens); *Halpern* v. *Board of Education*, 196 Conn. 647, 652 and n.4, 495 A.2d 264

(1985) (prior pending action doctrine is "a rule of justice and equity" that may be raised by motion to dismiss, as successor procedure to "a plea in abatement" (internal quotation marks omitted)); see also *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 582, 583–84 (observing that "motions to dismiss are not limited to jurisdictional challenges" and holding that "[a] plaintiff's failure to comply with the requirements of § 52-190a (a) does not destroy the court's subject matter jurisdiction over the claim," rendering "[d]ismissal pursuant to this section . . . a statutory remedy for any defendant who is subject to a legal action in which the statutorily required written opinion is not annexed to the complaint or initial pleading"); *Rios* v. *CCMC Corp.*, 106 Conn. App. 810, 821 n.8, 821–22, 943 A.2d 544 (2008) (observing that "motions to dismiss are [not] limited to jurisdictional challenges" in concluding that plain language of § 52-190a (c) made motion to dismiss, rather than motion to strike, proper procedural vehicle to challenge medical malpractice complaint filed without written opinion letter).

The legislature's focus on preventing frivolous medical malpractice litigation, and the suggestion proffered by Attorney Neubert in his testimony before the Judiciary Committee that some plaintiffs' attorneys had stretched the results of their precomplaint investigations when signing good faith certificates, indicates that the dismissal prescribed by § 52-190a is a statutory device that, like some of these other examples, plays a nonjurisdictional, merits related, gatekeeping function. Indeed, a conclusion to the contrary is inconsistent with the maxim that the legislature is presumed to be aware of this court's interpretation of statutes when it acts; see, e.g., *State* v. *Ashby*, 336 Conn. 452, 493, 247 A.3d 521 (2020); because, by adding subsection (c) to § 52-190a, P.A. 05-275 made clear the necessity of dismissal as the remedy for failure to file a proper certificate, which had been a subject of considerable discussion in *LeConche* without changing the existing statutory language providing that challenges to the good faith underlying the certificate were not considered until " '*after the completion of discovery*,' " on which the court had relied in determining that the good faith certificate did *not* implicate the court's jurisdiction. (Emphasis added.) *LeConche* v. *Elligers*, supra, 215 Conn. 711–13; see footnote 14 of this opinion. Although the legislature acted decisively by making dismissal mandatory in the event of noncompliance, its decision to continue to defer considerations of good faith until after the discovery process suggests that it did not consider that dismissal to contemplate the court's jurisdictional power to hale a health care provider before it.

## 2

### Stare Decisis Concerns

Although there is no support in the text or legislative

history of § 52-190a for *Morgan*'s holding that it implicates the court's personal jurisdiction, and ample support exists for a conclusion that it is a statutory device intended only to weed out frivolous medical malpractice suits by requiring plaintiffs to obtain a corroborating expert opinion prior to commencing a lawsuit, our inquiry does not end there. "The doctrine of stare decisis counsels that a court should not overrule its earlier decisions unless the most cogent reasons and inescapable logic require it." (Internal quotation marks omitted.) *State* v. *Ashby*, supra, 336 Conn. 487. "[Although] stare decisis is not an inexorable command . . . the doctrine carries such persuasive force that we have always required a departure from precedent to be supported by some special justification." (Internal quotation marks omitted.) *State* v. *Petion*, 332 Conn. 472, 503, 211 A.3d 991 (2019). "When a prior decision is seen so clearly as error that its enforcement [is] for that very reason doomed . . . the court should seriously consider whether the goals of stare decisis are outweighed, rather than dictated, by the prudential and pragmatic considerations that inform the doctrine to enforce a clearly erroneous decision." (Internal quotation marks omitted.) Id., 503–504; see *Conway* v. *Wilton*, 238 Conn. 653, 659–60, 680 A.2d 242 (1996).

"[I]n evaluating the force of stare decisis, our case law dictates that we should be especially wary of overturning a decision that involves the construction of a statute. . . . When we construe a statute, we act not as plenary lawgivers but as surrogates for another policy maker, [that is] the legislature. In our role as surrogates, our only responsibility is to determine what the legislature, within constitutional limits, intended to do. Sometimes, when we have made such a determination, the legislature instructs us that we have misconstrued its intentions. We are bound by the instructions so provided. . . . More often, however, the legislature takes no further action to clarify its intentions. Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute. . . . Once an appropriate interval to permit legislative reconsideration has passed without corrective legislative action, the inference of legislative acquiescence places a significant jurisprudential limitation on our own authority to reconsider the merits of our earlier decision." (Internal quotation marks omitted.) *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 417–18, 195 A.3d 664 (2018); accord *Spiotti* v. *Wolcott*, 326 Conn. 190, 201–202, 163 A.3d 46 (2017).

a

Considerations of Legislative Acquiescence

The legislative acquiescence doctrine does not necessarily foreclose reconsideration of a decision interpreting a statute. This is because "the legislative

acquiescence doctrine requires *actual acquiescence* on the part of the legislature. [Thus] [i]n most of our prior cases, we have employed the doctrine not simply because of legislative inaction, but because the legislature affirmatively amended the statute subsequent to a judicial or administrative interpretation, but chose not to amend the specific provision of the statute at issue. . . . In other words, [l]egislative concurrence is particularly strong [when] the legislature makes unrelated amendments in the same statute." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Stuart* v. *Stuart*, 297 Conn. 26, 47, 996 A.2d 259 (2010); see, e.g., *State* v. *Ashby*, supra, 336 Conn. 492–93; *Spiotti* v. *Wolcott*, supra, 326 Conn. 202; *State* v. *Salamon*, 287 Conn. 509, 525–26, 949 A.2d 1092 (2008).

Legislative acquiescence is not particularly strong in the present case because the legislature has made only a single minor amendment to § 52-190a in the more than eleven years since this court decided *Morgan*, and that amendment was to a different subsection of the statute and not germane to the opinion letter requirement at issue in *Morgan* and the present case.[21] See *State* v. *Salamon*, supra, 287 Conn. 525–26 (concluding that there was no actual acquiescence to interpretations of second degree kidnapping statute, General Statutes § 53a-94, when, "with the exception of a 1993 amendment . . . affecting only its penalty provisions, neither that section nor the pertinent definitional section . . . ha[d] been subject to any substantive amendments since it first was enacted in 1969" (footnote omitted)); *Conway* v. *Wilton*, supra, 238 Conn. 678 ("[w]e have . . . frowned [on] the use of legislative inaction regarding one section of a statute as a reliable indicator of legislative intent when the legislature has undertaken to amend other sections of the same statute").

b

Practical Effects of *Morgan*

Moving beyond concerns of legislative acquiescence, "[a]mong the factors that may justify overruling a prior decision interpreting a statute are intervening developments in the law, the potential for unconscionable results, the potential for irreconcilable conflicts and difficulty in applying the interpretation." (Internal quotation marks omitted.) *Graham* v. *Commissioner of Transportation*, supra, 330 Conn. 421. "In addition, a departure from precedent may be justified when the rule to be discarded may not be reasonably supposed to have determined the conduct of the litigants . . . ." (Internal quotation marks omitted.) *Spiotti* v. *Wolcott*, supra, 326 Conn. 202–203; see *Conway* v. *Wilton*, supra, 238 Conn. 661. As a procedural rule in a tort case, § 52-190a cannot reasonably be deemed to have determined the litigants' conduct. See, e.g., *George* v. *Ericson*, 250 Conn. 312, 326–27, 736 A.2d 889 (1999); *Conway* v. *Wilton*, supra, 661–62; see also *Corley* v. *United States*,

11 F.4th 79, 86–87 (2d Cir. 2021) (rejecting government's "contention that § 52-190a is substantive" for purposes of Federal Tort Claims Act proceeding because, despite its "substantive goal . . . to deter frivolous medical malpractice claims," it is "[a] rule that regulates pleading and service of process, and that has been expressly construed . . . [in *Morgan*] as having no effect on the standard for substantive liability" (internal quotation marks omitted)).

Developments in the law since *Morgan* illustrate the extent to which its holding as to personal jurisdiction has led to results that, in our view, are wholly unjustifiable in light of the legislature's intent in enacting § 52-190a. First, given this court's contemporaneous conclusion in *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 21, that "the author of an opinion letter pursuant to § 52-190a (a) must be a similar health care provider as that term is defined by § 52-184c (c), regardless of his or her potential qualifications to testify at trial pursuant to § 52-184c (d)," *Morgan*'s holding elevates the qualifications of the opinion letter's author to a jurisdictional factual prerequisite that is flatly inconsistent with the substantive law of medical malpractice. Under this regime, a plaintiff may prevail on the merits of a medical malpractice claim at trial on the basis of the opinion of an expert witness who would fail to qualify as a "similar health care provider" under § 52-184c and, thus, could not be used to establish that the claim was nonfrivolous for gatekeeping purposes under § 52-190a.[22] See General Statutes § 52-184c (d).

Second, in the wake of *Morgan* and *Bennett*, a voluminous body of case law[23] has developed to flesh out the proper procedures under § 52-190a. Although the defendants argue that this body of law demonstrates the extent to which *Morgan*'s conclusion as to personal jurisdiction has become "black letter law," the plaintiff and the trial lawyers contend that these cases demonstrate how far we have deviated from the purpose of § 52-190a, insofar as they require the dismissal of potentially nonfrivolous actions due to curable technical flaws unrelated to the actual merits of the claim. Accordingly, we now review the body of Appellate Court cases expanding on *Morgan* and the procedural incongruities that have arisen because of the jurisdictional nature of its holding.[24]

These cases demonstrate that the combined force of the case law construing § 52-190a imposes substantially greater burdens on a plaintiff than intended by the legislature in enacting the statute to require the substantiation of the precomplaint investigation. This is particularly so when coupled with case law requiring the plaintiff to prove the existence of personal jurisdiction in response to a motion to dismiss pursuant to § 52-190a. See, e.g., *LaPierre* v. *Mandell & Blau, M.D.'s, P.C.*, 202 Conn. App. 44, 49 n.3, 243 A.3d 816 (2020);

*Young* v. *Hartford Hospital*, 196 Conn. App. 207, 211, 229 A.3d 1112 (2020); see also *Standard Tallow Corp.* v. *Jowdy*, supra, 190 Conn. 53–54. One significant line of cases holds that the case law governing motions to dismiss under Practice Book §§ 10-30 and 10-31, such as *Dorry* v. *Garden*, 313 Conn. 516, 522–23, 98 A.3d 55 (2014), and *Conboy* v. *State*, supra, 292 Conn. 651–52, allows for courts deciding motions to dismiss under § 52-190a to consider "supplementary undisputed facts" in affidavits to "conclusively establish that jurisdiction is lacking," rather than to "conclusively presume the validity of the allegations in the complaint." (Internal quotation marks omitted.) *Labissoniere* v. *Gaylord Hospital, Inc.*, supra, 182 Conn. App. 453; see id., 452 (rejecting plaintiff's argument that trial court should *not* have "consider[ed] the affidavits that the defendants attached to their motions because the issues . . . *do not* involve factual issues concerning personal jurisdiction that are not determinable on the face of the record" (emphasis added; internal quotation marks omitted)); see also *Labissoniere* v. *Gaylord Hospital, Inc.*, 199 Conn. App. 265, 279–81, 235 A.3d 589 (trial court was not "obligated to accept as true [the plainitiffs'] allegations that the diagnosis and treatment of the decedent's postsurgical complications were within the specialty of general surgery and outside the specialty of internal medicine"), cert. denied, 335 Conn. 968, 240 A.3d 284, and cert. denied, 335 Conn. 968, 240 A.3d 285 (2020); *Lohnes* v. *Hospital of Saint Raphael*, 132 Conn. App. 68, 78, 31 A.3d 810 (2011) (relying on affidavit submitted in connection with motion to dismiss to establish that defendant was board certified in emergency medicine, rendering pulmonologist who authored opinion letter not "similar health care provider" for purposes of § 52-190a, given lack of "an express allegation" in complaint that defendant was practicing outside of his specialty), cert. denied, 303 Conn. 921, 34 A.3d 397 (2012).

Another series of Appellate Court decisions explains the restricted curative options—beyond resort to the accidental failure of suit statute following dismissal; see General Statutes § 52-592; *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 46–47, 12 A.3d 885 (2011)—that are available to plaintiffs given the jurisdictional implications of defective opinion letters under § 52-190a, as interpreted by *Morgan*. The leading decision of *Gonzales* v. *Langdon*, supra, 161 Conn. App. 518–19 and n.9, holds that the amendment of the complaint and opinion letter under General Statutes § 52-128 and Practice Book §§ 10-59 and 10-60 is available only when the request for leave to amend—whether discretionary or as of right within thirty days of the return day—is filed prior to the running of the applicable statute of limitations. To this end, the Appellate Court has also held that plaintiffs should not be permitted to use the amendment process to provide a missing opinion letter in the first instance, even during the thirty

day period in which amendments are permitted as of right pursuant to Practice Book § 10-59. See *Barnes* v. *Greenwich Hospital*, 207 Conn. App. 512, 523–25, 262 A.3d 1008, cert. denied, 340 Conn. 904, 263 A.3d 100 (2021).

Two decisions illustrate how restrictive *Gonzales* is in its application, given its roots in the personal jurisdiction aspect of *Morgan*. The upshot is that, "[r]egardless of the type of procedure a plaintiff elects to employ to cure a defect in an opinion letter filed in accordance with § 52-190a, that procedure must be initiated prior to the running of the statute of limitations. Otherwise, the sole remedy available will be to initiate a new action, if possible, pursuant to [the accidental failure of suit statute] § 52-592." *Peters* v. *United Community & Family Services, Inc.*, 182 Conn. App. 688, 706, 191 A.3d 195 (2018). Consistent with this principle, the Appellate Court has held that the jurisdictional implications of the opinion letter preclude the use of the relation back doctrine to render timely amendments to complaints that are intended to cure legally insufficient opinion letters. See *Ugalde* v. *Saint Mary's Hospital, Inc.*, 182 Conn. App. 1, 9–13, 188 A.3d 787, cert. denied, 330 Conn. 928, 194 A.3d 1195 (2018); see id., 12–13 (noting that permitting use of relation back doctrine to save actions supported by insufficient opinion letters would "[circumvent]" accidental failure of suit procedure and "would be *fundamentally inconsistent with* [*the approach*] *taken by the legislature in mandating the dismissal of such actions for lack of personal jurisdiction*" (emphasis added)). Further, the Appellate Court has held that an explanatory or clarifying affidavit may not be used to address defects in the opinion letter itself, after the expiration of the limitation period, rejecting an attempt to limit *Gonzales*' application "only [to] those cases in which a plaintiff has sought to cure a defective opinion letter by way of an amendment of the pleadings . . . ."[25] *Peters* v. *United Community & Family Services, Inc.*, supra, 703; see id., 705 ("[i]t simply would be illogical and an unwarranted circumvention of our decision in *Gonzales* to conclude that a plaintiff could avoid dismissal by submitting an affidavit in lieu of an amendment").

Tying it all together, the Appellate Court's recent decision in *Kissel* v. *Center for Women's Health, P.C.*, 205 Conn. App. 394, 258 A.3d 677, cert. denied, 339 Conn. 917, 262 A.3d 137, and cert. granted, 339 Conn. 917, 262 A.3d 138 (2021), and cert. granted, 339 Conn. 916, 262 A.3d 139 (2021), illustrates the extreme result of considering the opinion letter to implicate personal jurisdiction. Although the plaintiff in *Kissel* had obtained an opinion letter from a similar health care provider, she neglected to attach it to the complaint out of "inadvertence or oversight." (Internal quotation marks omitted.) Id., 409; see id., 421–22. When the action was brought in 2012, the trial court denied the defendant's

motion to dismiss for lack of "personal jurisdiction on the basis of the plaintiff's failure (1) to attach an opinion letter from a similar health care provider to her medical malpractice complaint and (2) to cure that defect within the applicable two year statutory limitation period."[26] Id., 400; see id., 401. Five years later, in 2017, the case was tried to a jury, which returned a verdict for the plaintiff. Id., 409. After trial, the trial court denied the defendant's motion for reconsideration of the denial of the motion to dismiss. See id., 409–10.

On appeal in *Kissel*, the Appellate Court reversed the judgment of the trial court, concluding that the trial court had improperly relied on equitable and public policy grounds in denying reconsideration of its denial of the motion to dismiss. See id., 397, 406, 410. The court first emphasized that, under *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 27–29, and *Morgan* v. *Hartford Hospital*, supra, 301 Conn. 399, "in a medical malpractice action, a plaintiff must comply with § 52-190a by including an opinion letter from a similar health care provider with the complaint to establish personal jurisdiction, and a timely challenge to the failure to include a legally sufficient opinion letter will result in a dismissal." *Kissel* v. *Center for Women's Health, P.C.*, supra, 205 Conn. App. 416. Discussing *Gonzales* v. *Langdon*, supra, 161 Conn. App. 497, *Ugalde* v. *Saint Mary's Hospital, Inc.*, supra, 182 Conn. App. 1, and *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 688, the Appellate Court then observed that, during "the time period between the denial of the 2012 motions and the second motion for reconsideration filed in 2018, the law concerning § 52-190a developed in our appellate courts. . . . Significantly, our jurisprudence shifted from consideration of whether the opinion letter had existed at the time the plaintiff commenced the malpractice action to a focus on whether the elected procedure to remedy a defective opinion letter had begun prior to the expiration of the statute of limitations." (Citations omitted.) *Kissel* v. *Center for Women's Health, P.C.*, supra, 422–23. The Appellate Court then afforded that body of case law retroactive effect, despite the "extended time period" at issue in the case, given the timely personal jurisdictional challenge raised by the defendant in 2012. Id., 429; see id., 428–30.

Acknowledging its "pragmatic nature"; id., 431; the Appellate Court nevertheless rejected the "plaintiff's contention [in *Kissel*] that, as a result of the jury's verdict, the purpose of § 52-190a, preventing frivolous medical malpractice actions, was served . . . and, therefore, to dismiss the medical malpractice action at [that] juncture would elevate form over substance to an unreasonable degree." Id., 430. The Appellate Court stated: "Consistent with established precedent, an appellate determination that the trial court [incorrectly] concluded that personal jurisdiction existed has

resulted in the dismissal or vacatur of the subsequent proceedings before the trial court. . . . For these reasons, we are not persuaded by the plaintiff's argument that a jury verdict in a medical malpractice action would insulate a defect in the required opinion letter from appellate review." (Citations omitted.) Id., 432; see *Barnes* v. *Greenwich Hospital*, supra, 207 Conn. App. 524 ("this court's holding in *Kissel* leaves no room for doubt that [when] a plaintiff in a medical malpractice action fails to attach an opinion letter to the initial complaint and [curative efforts] are not initiated prior to the expiration of the statute of limitations, the court lacks personal jurisdiction over the defendant and the action is subject to dismissal pursuant to § 52-190a (c)"). The Appellate Court's recent decision in *Kissel*, which is wholly consistent with its post-*Morgan* body of case law with respect to addressing flawed or absent opinion letters, reveals the danger of *Morgan*'s conclusion that the opinion letter implicates personal jurisdiction. By elevating the opinion letter to a jurisdictional prerequisite of any kind, it allows a potential prelitigation defect to defeat a medical malpractice action that a jury has deemed meritorious after several years of litigation.

C

Conclusion and Other Procedural Issues
Attendant to Overruling *Morgan*

For all of the foregoing reasons, we agree with the plaintiff and the trial lawyers that *Morgan* is clearly wrong and should be overruled to the extent that it holds that the opinion letter implicates the court's personal jurisdiction.[27] Particularly with respect to the difficulty of amending flawed opinion letters, the jurisdictional body of case law spawned by *Morgan* has created roadblocks for otherwise meritorious cases that are squarely at odds with the legislature's limited goal of ensuring an adequate, good faith investigation and eliminating only frivolous cases. Put differently, categorizing the opinion letter in any way as jurisdictional has had the effect of elevating the credential of the authoring health care provider to a jurisdictional prerequisite and turned what the legislature intended to be a simple prelitigation documentation of the plaintiff's good faith inquiry into, in essence, a trap under which even meritorious suits are subject to dismissal. Instead, we conclude that the legislative history and text indicate that dismissal under § 52-190a is a unique statutory remedy intended to strengthen the existing good faith inquiry and to expedite the disposition of obviously frivolous medical malpractice actions.

We recognize that this conclusion renders inapplicable to the § 52-190a motion to dismiss the rules of practice and applicable case law governing the pleading and proof of jurisdictional facts, as explicated by *Conboy* v. *State*, supra, 292 Conn. 650–52, and set forth in foot-

note 12 of this opinion. See *Durkin* v. *Intevac, Inc.*, supra, 258 Conn. 464, 480 (thirty day deadline provided by Practice Book §§ 10-30 and 10-32 was not applicable to motion to dismiss on ground of forum non conveniens, which is principle of deference rather than jurisdiction). Accordingly, we provide two more points of procedural clarification as to the adjudication of motions to dismiss under § 52-190a that guide our analysis of the motion to dismiss in the present case.

First, we agree with the argument of the trial lawyers and clarify that, as stated in *Bennett*, the inquiry under § 52-190a is squarely and solely framed by the allegations in the complaint, rendering the only question at the motion to dismiss stage whether the author of the opinion letter is a similar health care provider to the defendant as their respective qualifications are pleaded in the complaint and described in the opinion letter. See *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 23–24 (general surgeon was not similar health care provider when complaint alleged "that the defendant 'specialize[d] in the field of emergency medicine' "); see also *Gonzales* v. *Langdon*, supra, 161 Conn. App. 506 (relying on *Bennett* for proposition that "the actual board certification of the defendant is not what matters; the appropriate similar health care provider is defined by the allegations in the complaint"). Thus, contrary to the Appellate Court's decision in *Labissoniere* v. *Gaylord Hospital, Inc.*, supra, 182 Conn. App. 452–53, there simply is no place in the § 52-190a inquiry for the consideration of affidavits or other materials intended to inject factual disputes beyond the adequacy of the pleadings and the annexed letter. Because the opinion letter is not itself process, to the extent that the opinion letter itself is legally insufficient or defective under § 52-190a, trial courts retain the authority to permit amendments or supplementation of a challenged letter in response to a motion to dismiss, as the legislature itself evidently contemplated.[28] See Conn. Joint Standing Committee Hearings, supra, p. 5552.

Second, we emphasize that our ultimate holding in *Morgan*, namely, that a motion to dismiss for failure to file an opinion letter pursuant to § 52-190a remains waivable, including by inaction, remains good law. See *Morgan* v. *Hartford Hospital*, supra, 301 Conn. 391. Specifically, we agree with the trial lawyers that, consistent with the legislature's intent of screening out frivolous malpractice actions early in the litigation process, the order of the pleadings provided by Practice Book §§ 10-6 and 10-7[29] continues to render dismissal under § 52-190a waivable for failure to file a timely motion to dismiss; see id.; and requires that the motion to dismiss be filed early in the action, as the legislature envisioned in enacting the statute.[30] See, e.g., *Wilkins* v. *Connecticut Childbirth & Women's Center*, supra, 314 Conn. 729–30.

## II
### REVIEW OF THE FACIAL SUFFICIENCY OF THE OPINION LETTER AND THE ALLEGATIONS IN THE COMPLAINT

We now turn to the plaintiff's claim that the opinion letter was legally sufficient under § 52-190a because the "contents of the complaint adequately allege that . . . Daar held himself out as a specialist endodontist . . . Daar's affidavit failed to adequately refute those allegations, and the opinion letter establishes that . . . Solomon," a professor of endodontics, "is a similar health care provider to an endodontic specialist." Relying on well established case law holding that pleadings should be read "broadly and realistically, rather than narrowly and technically"; (internal quotation marks omitted) *Doe* v. *Cochran*, 332 Conn. 325, 333, 210 A.3d 469 (2019); the plaintiff argues that his complaint adequately alleged that Daar held himself out as a specialist in endodontics "by virtue of advertising [on Shoreline's website] that he received substantial additional training in endodontics."[31] The plaintiff then argues that Solomon's statement in the opinion letter that "he received his specialty boards," read in context with Solomon's credentials as a professor of endodontics at Columbia and his practice of endodontics in New York City, establishes that he is a "similar health care provider" by supporting the reasonable inference that his board certification is in endodontics, as defined by the American Association of Endodontists. We agree with the plaintiff and conclude that a broad and realistic reading of the face of the complaint and opinion letter establishes their compliance with § 52-190a.

"The interpretation of pleadings is always a question of law for the court . . . . Our review of the trial court's interpretation of the pleadings therefore is plenary. . . . Furthermore, we long have eschewed the notion that pleadings should be read in a hypertechnical manner. *Rather, [t]he modern trend, which is followed in Connecticut, is to construe pleadings broadly and realistically, rather than narrowly and technically.* . . . [T]he complaint must be read in its entirety in such a way as to give effect to the pleading with reference to the general theory [on] which it proceeded, and do substantial justice between the parties. . . . Our reading of pleadings in a manner that advances substantial justice means that a pleading must be construed reasonably, to contain all that it fairly means, but carries with it the related proposition that it must not be contorted in such a way so as to strain the bounds of rational comprehension." (Emphasis added; internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co., LLC*, 312 Conn. 286, 299–300, 94 A.3d 553 (2014); see, e.g., *Doe* v. *Cochran*, supra, 332 Conn. 333–34; *Travelers Ins. Co.* v. *Namerow*, 261 Conn. 784, 795, 807 A.2d 467 (2002). "As long as the pleadings provide sufficient

notice of the facts claimed and the issues to be tried and do not surprise or prejudice the opposing party, we will not conclude that the complaint is insufficient to allow recovery." (Internal quotation marks omitted.) *Flannery* v. *Singer Asset Finance Co.*, *LLC*, supra, 300.

The challenged portions of the operative pleadings support the plaintiff's position. Quoting from Shoreline's website in support of the allegation, the operative complaint alleges that Daar "held himself out as a practitioner of [e]ndodontics, stating on [Shoreline's] website that 'he has completed hundreds of hours of training in [e]ndodontics.' " The complaint then states that Shoreline's website "describes [e]ndodontics, in part, as . . . 'the dental specialty that deals with tissues and structures located inside the tooth' " and explains root canal therapy.[32]

A broad and realistic reading of the allegation that Daar "held himself out as a practitioner" in the specific field of endodontics, with the accompanying description of the field of endodontics and his extensive training in that field, triggers the applicability of § 52-184c (c) with respect to the selection of a similar health care provider to author the good faith opinion letter required by § 52-190a. The plain meaning of the word "practitioner" suggests one who has elected to make a chosen professional field his or her occupation, in this case, endodontics. See American Heritage College Dictionary (4th Ed. 2007) p. 1093 (defining "practice" as "[t]o work at, [especially] as a profession," and "practitioner" as "[o]ne who practices something, [especially] an occupation, profession, or technique"). One widely regarded dictionary, which defines "practitioner" as "a person engaged in the practice of a profession, occupation, etc.," specifically identifies "doctor," "master," and "*specialist*" as related words. (Emphasis added.) Dictionary.com, available at https://www.dictionary.com/browse/practitioner (last visited January 31, 2023).

Although the complaint does not use certain talismanic words to indicate that Daar is board certified, "specializes" in endodontics, or "held himself out" as such a "specialist," a reasonable reading of the complaint, accompanied by the opinion letter reciting Solomon's board certification and extensive academic credentials in endodontics, supports the conclusion that Solomon is a "similar health care provider" to Daar, as that term was intended by the legislature when it amended § 52-190a to ensure that there are nonfrivolous factual bases for medical malpractice claims brought in Connecticut's courts. See, e.g., *Wilkins* v. *Connecticut Childbirth & Women's Center*, supra, 314 Conn. 728–30. A conclusion to the contrary runs afoul of the "well settled" principle that our "courts do not interpret pleadings so to require the use of talismanic words and phrases." *Antonio A*. v. *Commissioner of Correction*, 205 Conn. App. 46, 90, 256 A.3d 684, cert. denied, 339

Conn. 909, 261 A.3d 744 (2021); see *State* v. *Elson*, 311 Conn. 726, 752–53, 91 A.3d 862 (2014) (emphasizing "this court's refusal in a variety of contexts to attach talismanic significance to the presence or absence of particular words or phrases" (internal quotation marks omitted)); see also, e.g., *Flannery* v. *Singer Asset Finance Co.*, *LLC*, supra, 312 Conn. 303–304 ("[a]lthough it would have been a far better practice for the plaintiff to use the words 'continuing course of conduct' in his pleading in avoidance, the record demonstrates that the defendant was sufficiently apprised of the plaintiff's intent to rely on that doctrine and suffered no prejudice as a result of the plaintiff's lapse in pleading"); *Deming* v. *Nationwide Mutual Ins. Co.*, 279 Conn. 745, 778, 905 A.2d 623 (2006) (rejecting "the defendants' contention that the plaintiffs' allegations referring to 'renewals,' rather than 'renewal commissions,' and 'insurance agent' or 'Nationwide agent,' rather than 'producer,' are dispositive"); *Travelers Ins. Co.* v. *Namerow*, supra, 261 Conn. 800–801 (insurer was not required to plead special defense using words "civil arson" given detailed nature of allegations in answer, which alleged intentional act by insured and described fire as " 'incendiary' " in nature); *Antonio A.* v. *Commissioner of Correction*, supra, 90 (conclusion that petitioner did not raise claim of actual innocence in habeas petition was "based on the lack of material facts contained therein in support of a claim of actual innocence; it [was] not the result of the petitioner's failure to use the specific phrase 'actual innocence' "). Thus, we conclude that that a broad and realistic reading of the complaint suggests that it is pleading that Daar held himself out as a specialist in endodontics, rendering Solomon, a professor of endodontics, a similar health care provider.[33] The Appellate Court, therefore, improperly upheld the trial court's granting of the defendants' motion to dismiss.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court with direction to deny the defendants' motion to dismiss and for further proceedings according to law.

In this opinion the other justices concurred.

* February 1, 2023, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] General Statutes § 52-190a provides: "(a) No civil action or apportionment complaint shall be filed to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, whether in tort or in contract, in which it is alleged that such injury or death resulted from the negligence of a health care provider, unless the attorney or party filing the action or apportionment complaint has made a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the claimant. *The complaint, initial pleading or apportionment complaint shall contain a certificate of the attorney or party filing the action or apportionment complaint that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant or for an apportionment complaint against each named apportionment*

*defendant. To show the existence of such good faith, the claimant or the claimant's attorney, and any apportionment complainant or the apportionment complainant's attorney, shall obtain a written and signed opinion of a similar health care provider, as defined in section 52-184c, which similar health care provider shall be selected pursuant to the provisions of said section, that there appears to be evidence of medical negligence and includes a detailed basis for the formation of such opinion. Such written opinion shall not be subject to discovery by any party except for questioning the validity of the certificate.* The claimant or the claimant's attorney, and any apportionment complainant or apportionment complainant's attorney, shall retain the original written opinion and *shall attach a copy of such written opinion, with the name and signature of the similar health care provider expunged, to such certificate.* The similar health care provider who provides such written opinion shall not, without a showing of malice, be personally liable for any damages to the defendant health care provider by reason of having provided such written opinion. In addition to such written opinion, the court may consider other factors with regard to the existence of good faith. If the court determines, after the completion of discovery, that such certificate was not made in good faith and that no justiciable issue was presented against a health care provider that fully cooperated in providing informal discovery, the court upon motion or upon its own initiative shall impose upon the person who signed such certificate or a represented party, or both, an appropriate sanction which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney's fee. The court may also submit the matter to the appropriate authority for disciplinary review of the attorney if the claimant's attorney or the apportionment complainant's attorney submitted the certificate.

"(b) Upon petition to the clerk of any superior court or any federal district court to recover damages resulting from personal injury or wrongful death, an automatic ninety-day extension of the statute of limitations shall be granted to allow the reasonable inquiry required by subsection (a) of this section. This period shall be in addition to other tolling periods.

"(c) The failure to obtain and file the written opinion required by subsection (a) of this section shall be grounds for the dismissal of the action." (Emphasis added.)

[2] We initially granted the plaintiff's petition for certification to appeal, limited to the following issue: "Did the Appellate Court properly uphold the trial court's dismissal of the plaintiff's medical malpractice action for failure to comply with . . . § 52-190a?" *Carpenter* v. *Daar*, 335 Conn. 962, 239 A.3d 1215 (2020).

Following oral argument in this certified appeal, on July 5, 2022, pursuant to *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 162–63, 84 A.3d 840 (2014), we ordered the parties and invited the amici curiae—the Connecticut Defense Lawyers Association and the Connecticut Trial Lawyers Association—to file supplemental briefs, limited to the following issue: "Did this court properly conclude in *Morgan* v. *Hartford Hospital*, [supra] 301 Conn. 388 . . . that the good faith opinion letter required by . . . [§] 52-190a implicates the personal jurisdiction of the court over the defendant?" See, e.g., *State* v. *Peluso*, 344 Conn. 404, 413 n.7, 279 A.3d 707 (2022) (Supreme Court may modify certified question as necessary).

[3] "Although the opinion letter attached to the complaint in the present action had the name of the author redacted, which is authorized pursuant to § 52-190a (a), in their briefs, both the plaintiff and the defendants acknowledge that Solomon was the author." *Carpenter* v. *Daar*, supra, 199 Conn. App. 369 n.1.

[4] General Statutes § 52-184c provides: "(a) In any civil action to recover damages resulting from personal injury or wrongful death occurring on or after October 1, 1987, in which it is alleged that such injury or death resulted from the negligence of a health care provider, as defined in section 52-184b, the claimant shall have the burden of proving by the preponderance of the evidence that the alleged actions of the health care provider represented a breach of the prevailing professional standard of care for that health care provider. The prevailing professional standard of care for a given health care provider shall be that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by reasonably prudent similar health care providers.

"(b) If the defendant health care provider is not certified by the appropriate

American board as being a specialist, is not trained and experienced in a medical specialty, or does not hold himself out as a specialist, a 'similar health care provider' is one who: (1) Is licensed by the appropriate regulatory agency of this state or another state requiring the same or greater qualifications; and (2) is trained and experienced in the same discipline or school of practice and such training and experience shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim.

"(c) If the defendant health care provider is certified by the appropriate American board as a specialist, is trained and experienced in a medical specialty, or holds himself out as a specialist, a 'similar health care provider' is one who: (1) Is trained and experienced in the same specialty; and (2) is certified by the appropriate American board in the same specialty; provided if the defendant health care provider is providing treatment or diagnosis for a condition which is not within his specialty, a specialist trained in the treatment or diagnosis for that condition shall be considered a 'similar health care provider'.

"(d) Any health care provider may testify as an expert in any action if he: (1) Is a 'similar health care provider' pursuant to subsection (b) or (c) of this section; or (2) is not a similar health care provider pursuant to subsection (b) or (c) of this section but, to the satisfaction of the court, possesses sufficient training, experience and knowledge as a result of practice or teaching in a related field of medicine, so as to be able to provide such expert testimony as to the prevailing professional standard of care in a given field of medicine. Such training, experience or knowledge shall be as a result of the active involvement in the practice or teaching of medicine within the five-year period before the incident giving rise to the claim."

[5] The Appellate Court's opinion sets forth a more detailed recitation of the facts and procedural history. See *Carpenter* v. *Daar*, supra, 199 Conn. App. 370–78.

[6] We note that the plaintiff brought the present action pursuant to General Statutes § 52-592, the accidental failure of suit statute, following the dismissal of a previous action against the defendants for failure to provide an opinion letter that complied with § 52-190a. See *Carpenter* v. *Daar*, supra, 199 Conn. App. 370.

[7] Hereinafter, we refer to the opinion letter and the supplemental correspondence, both of which were attached to the complaint, as the "opinion letter."

[8] The trial court "rejected the defendants' argument . . . that the plaintiff could not cure any deficiencies in the opinion letter attached to his complaint with Solomon's supplemental affidavit because it was filed after the statute of limitations had expired." *Carpenter* v. *Daar*, supra, 199 Conn. App. 375. In so concluding, the trial court relied on the "[effective]" modification and extension of the applicable statute of limitations; id., 376; see General Statutes § 52-584; by the accidental failure of suit statute; see General Statutes § 52-592; but "did not find any facts or provide any analysis as to why, under the circumstances of this case, the plaintiff was entitled to the benefit of the saving provisions of the accidental failure of suit statute . . . ." *Carpenter* v. *Daar*, supra, 376.

[9] The Appellate Court further observed: "General Statutes § 20-106a prohibits any licensed or registered dentist from designating that his practice is limited to a specialty recognized by the American Dental Association unless the dentist has completed two or more years of advanced or postgraduate education in the area of the specialty. The completion of hours of continuing education over the years when Daar has been practicing as a general dentist in Connecticut since 1982, is not synonymous with being a specialist. Dentists in Connecticut are prohibited from renewing their practice licenses unless they take a requisite number of continuing education credits. See General Statutes § 20-126c (b) (requiring all licensed dentists to have minimum of [twenty-five] contact hours of continuing education within twenty-four months preceding their application for renewal). The plaintiff's theory that hours of continuing education [contribute] to holding oneself out as a specialist would result in treating all physicians and dentists, regardless of whether they are trained and experienced in a specialty, as health providers holding themselves out as specialists merely because they have completed required continuing education." *Carpenter* v. *Daar*, supra, 199 Conn. App. 393.

[10] The Appellate Court also noted that "the plaintiff took no steps [pursuant to Practice Book § 10-3 (c)] to counter the contents of Daar's affidavit, which indicated that he has been engaged in the practice of general dentistry

since 1982 and refuted the plaintiff's mischaracterization of the content of his website." *Carpenter* v. *Daar*, supra, 199 Conn. App. 394. The Appellate Court held that the trial "court was not bound to presume the validity of only the facts alleged in the complaint. Furthermore, [the trial court] noted that the complaint itself failed to sufficiently allege [that] Daar was holding himself out as a specialist. The indeterminate complaint, as well as the undisputed facts alleged in Daar's affidavit, justified the [trial] court's conclusion that Daar was neither a specialist . . . nor holding himself out to be one . . . ." Id., 395.

[11] The defendants contend that the plaintiff misquoted Shoreline's website out of context in elevating Daar's continuing education to claims of specialty training. They emphasize the "distinction between a general dentist's continuing education and the postdoctoral specialty residency program to become a specialist in a recognized dental specialty such as endodontics"; (footnote omitted); given the statutory requirements for board certification under General Statutes § 20-106a. See footnote 9 of this opinion.

[12] In *Conboy*, a sovereign immunity case, this court considered the various factual circumstances under which trial courts can consider motions to dismiss for lack of subject matter jurisdiction under Practice Book §§ 10-30 and 10-31, namely, "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . Different rules and procedures will apply, depending on the state of the record at the time the motion is filed." (Citation omitted; internal quotation marks omitted.) *Conboy* v. *State*, supra, 292 Conn. 651.

"The standard of review for a court's decision on a motion to dismiss [under Practice Book § 10-31 (a) (1)] is well settled. A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . . The motion to dismiss . . . admits all facts [that] are well pleaded, invokes the existing record and must be decided [on] that alone. . . . In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged. . . .

"Trial courts addressing motions to dismiss for lack of subject matter jurisdiction pursuant to [Practice Book] § 10-31 (a) (1) may encounter different situations, depending on the status of the record in the case. As summarized by a federal court discussing motions brought pursuant to the analogous federal rule, [l]ack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. . . . Different rules and procedures will apply, depending on the state of the record at the time the motion is filed.

"When a trial court decides a jurisdictional question raised by a pretrial motion to dismiss on the basis of the complaint alone, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader. . . .

"In contrast, if the complaint is supplemented by undisputed facts established by affidavits submitted in support of the motion to dismiss; Practice Book § 10-31 (a); [and/or] other types of undisputed evidence . . . taken . . . the trial court, in determining the jurisdictional issue, may consider these supplementary undisputed facts and need not conclusively presume the validity of the allegations of the complaint. . . . Rather, those allegations are tempered by the light shed on them by the [supplementary undisputed facts]. . . . If affidavits [or] other evidence submitted in support of a defendant's motion to dismiss conclusively establish[es] that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits; see Practice Book § 10-31 (b); or other evidence, the trial court may dismiss the action without further proceedings. . . . If, however, the defendant submits either no proof to rebut the plaintiff's jurisdictional allegations . . . or only evidence that fails to call those allegations into question

. . . the plaintiff need not supply counteraffidavits or other evidence to support the complaint . . . but may rest on the jurisdictional allegations therein. . . .

"Finally, [when] a jurisdictional determination is dependent on the resolution of a critical factual dispute, it cannot be decided on a motion to dismiss in the absence of an evidentiary hearing to establish jurisdictional facts. . . . Likewise, if the question of jurisdiction is intertwined with the merits of the case, a court cannot resolve the jurisdictional question without a hearing to evaluate those merits. . . . An evidentiary hearing is necessary because a court cannot make a critical factual [jurisdictional] finding based on memoranda and documents submitted by the parties." (Citations omitted; internal quotation marks omitted.) *Dorry* v. *Garden*, 313 Conn. 516, 521–24, 98 A.3d 55 (2014); see *Conboy* v. *State*, supra, 292 Conn. 650–54; see also *Conboy* v. *State*, supra, 653 n.15 ("[a] preliminary evidentiary hearing ordinarily will suffice [when] the jurisdictional issue is distinct and severable from the merits of the action, for example, when personal jurisdiction is called into question").

Although *Conboy* itself concerned subject matter jurisdiction, the substance of its analysis has been applied to consider claims in personal jurisdiction cases. See, e.g., *North Sails Group, LLC* v. *Boards & More GmbH*, 340 Conn. 266, 269–70, 264 A.3d 1 (2021). This includes challenges to personal jurisdiction arising under § 52-190a, as interpreted by *Morgan*. See, e.g., *Barnes* v. *Greenwich Hospital*, 207 Conn. App. 512, 518–19 and n.12, 262 A.3d 1008, cert. denied, 340 Conn. 904, 263 A.3d 100 (2021); *Caron* v. *Connecticut Pathology Group, P.C.*, 187 Conn. App. 555, 563–64, 202 A.3d 1024, cert. denied, 331 Conn. 922, 206 A.3d 187 (2019). This analysis is consistent with the extension of the due process aspects of the hearing required by *Standard Tallow Corp.*, which involved the issue of minimum contacts in the personal jurisdiction context; see *Standard Tallow Corp.* v. *Jowdy*, 190 Conn. 48, 56, 459 A.2d 503 (1983); to issues of subject matter jurisdiction. See, e.g., *Bank of New York Mellon* v. *Tope*, 345 Conn. 662–63, 682,    A.3d    (2022) (plaintiff's standing to bring foreclosure action); *Graham* v. *Commissioner of Transportation*, 330 Conn. 400, 443, 195 A.3d 664 (2018) (*D'Auria, J.*, dissenting) (proof of agency relationship between Commissioner of Transportation and state employee for purposes of waiver of sovereign immunity under General Statutes § 13a-144); *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 393 n.8, 973 A.2d 1229 (2009) (prior pending action doctrine).

[13] Practice Book § 10-32 provides: "Any claim of lack of jurisdiction over the person or insufficiency of process or insufficiency of service of process is waived if not raised by a motion to dismiss filed in the sequence provided in Sections 10-6 and 10-7 and within the time provided by Section 10-30."

[14] In *LeConche*, this court considered whether the failure of a medical malpractice complaint to include a good faith certificate deprived the court of subject matter jurisdiction. See *LeConche* v. *Elligers*, supra, 215 Conn. 707–709. In concluding that it did not, and that the trial court therefore should have permitted the plaintiffs to amend their complaint to include the certificate; see id., 715; this court observed that, although "the general purpose of § 52-190a is to discourage the filing of baseless lawsuits against health care providers . . . the good faith certificate is [not] so central to that purpose that it is 'of the essence of the thing to be accomplished,' " thus rendering it subject matter jurisdictional in nature. Id., 710–11. The court emphasized that the "purpose of the certificate is to evidence a plaintiff's good faith derived from the precomplaint inquiry. It serves as an assurance to a defendant that a plaintiff has in fact made a reasonable precomplaint inquiry giving him a good faith belief in the defendant's negligence. In light of that purpose, the lack of a certificate does not defeat what would otherwise be valid jurisdiction in the court. The purpose is just as well served by viewing the statutory requirement that the complaint contain a good faith certificate as a pleading necessity akin to an essential allegation to support a cause of action. Viewed through that prism, the absence from the complaint of the statutorily required good faith certificate renders the complaint subject to a motion to strike . . . for failure to state a claim [on] which relief can be granted, and to render that absence curable by timely amendment . . . ." (Footnote omitted.) Id., 711.

In so concluding, this court observed in *LeConche* that the pre-2005 version of § 52-190a did "not address the consequences of a failure to file a certificate" but did "address the consequences of filing of what is later deemed to be a false certificate," with that determination to be made after the completion of discovery. Id., 712. The court observed: "Assuming without deciding that 'an appropriate sanction' for filing a false certificate includes

dismissal, it is clear that such a dismissal would be discretionary, rather than required due to lack of subject matter jurisdiction." Id.

[15] In concluding in *Morgan* that the opinion letter and good faith certificate did not pertain to subject matter jurisdiction, this court cited to *Plante* v. *Charlotte Hungerford Hospital*, 300 Conn. 33, 46–47, 12 A.3d 885 (2011), which held that, " 'when a medical malpractice action has been dismissed pursuant to § 52-190a (c) for failure to supply an opinion letter by a similar health care provider required by § 52-190a (a), a plaintiff may commence an otherwise time barred new action pursuant to the matter of form provisions of [General Statutes] § 52-592 (a) only if that failure was caused by a simple mistake or omission, rather than egregious conduct or gross negligence attributable to the plaintiff or his attorney.' Consequently, we recognized that the written opinion letter, much like the good faith certificate in *LeConche* [v. *Elligers*, supra, 215 Conn. 701], involved a matter of form [the] deficiencies [of which], at least in the case of simple mistake or omission, could be remedied by the failure of form provisions of the accidental failure of suit statute." *Morgan* v. *Hartford Hospital*, supra, 301 Conn. 399–400.

[16] Significantly, the court in *Morgan* squarely rejected the argument that "the statutory remedy of dismissal does not invoke the court's jurisdiction in *any* manner and that any conclusion to the contrary would lead to bizarre, unworkable results." (Emphasis added.) *Morgan* v. *Hartford Hospital*, supra, 301 Conn. 403. In particular, the court determined that the defendant's reading of § 52-190a as not relating to personal jurisdiction would excuse compliance with the deadlines set by Practice Book §§ 10-30 and 10-32 and lead to absurd results by (1) presuming that experienced defense attorneys would miss the thirty day dismissal deadline and allow a frivolous case to proceed, and (2) allowing motions to dismiss to be filed many months into the litigation, perhaps at the nineteenth hour after the expense of depositions. See id., 403–404.

[17] "[W]hen the legal issue presented in connection with a motion to dismiss is one of statutory construction, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation. . . . Further, in construing statutes, we presume that there is a purpose behind every sentence, clause or phrase used in an act, and that no part of a statute is superfluous." (Citation omitted; internal quotation marks omitted.) *Wilkins* v. *Connecticut Childbirth & Women's Center*, supra, 314 Conn. 718–19.

[18] This is in contrast to subject matter jurisdiction, which "is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Internal quotation marks omitted.) *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 31, 848 A.2d 418 (2004).

[19] Examples abound in title 52 of the General Statutes. See, e.g., General Statutes § 52-59b (a) through (c) (long arm statute setting forth numerous bases for acts committed "in person or through an agent," over which "a court may *exercise personal jurisdiction* over any nonresident individual, foreign partnership or foreign voluntary association, or over the executor or administrator of such nonresident individual, foreign partnership or foreign voluntary association," emphasizing that, "[w]here *personal jurisdiction is based solely upon this section*, an appearance does not confer personal jurisdiction with respect to causes of action not arising from an act enumerated in this section," and describing method by which "any process in any civil action brought against the nonresident . . . may be served upon the Secretary of the State and shall have the same validity as if served . . . personally" (emphasis added)); General Statutes § 52-102b (a) (apportionment action may be commenced by service of "a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability," and "such writ, summons and complaint, [i.e.] the apportionment complaint,

*shall be served* within one hundred twenty days of the return date specified in the plaintiff's original complaint" (emphasis added)).

Beyond title 52, other titles in the General Statutes also have provisions that refer specifically to personal jurisdiction and the service of process. See, e.g., General Statutes § 1-101oo (a) and (c) (prescribing that, "[i]n addition to its jurisdiction over persons who are residents of this state, the Office of State Ethics may exercise personal jurisdiction over any nonresident person, or the agent of such nonresident person, who makes a payment of money or gives anything of value to a public official or state employee in violation of section 1-101nn, or who is, or is seeking to be, prequalified under section 4a-100," and setting forth method for "service of process" on either such nonresident's "registered agent" or "the Secretary of the State"); General Statutes § 7-137c ("the owner of any property so assessed may appeal to the superior court . . . from the valuation of his assessment, by service of process made in accordance with the provisions of section 52-57").

[20] "Section 52-190a originally was enacted as part of the Tort Reform Act of 1986. See Public Acts 1986, No. 86-338, § 12. The original version of the statute required the plaintiff in any medical malpractice action to conduct 'a reasonable inquiry as permitted by the circumstances to determine that there are grounds for a good faith belief that there has been negligence in the care or treatment of the [plaintiff]' and to file a certificate 'that such reasonable inquiry gave rise to a good faith belief that grounds exist for an action against each named defendant.' General Statutes (Rev. to 1987) § 52-190a (a). The original statute did not require the plaintiff to obtain the written opinion of a similar health care provider that there appeared to be evidence of medical negligence, but permitted the plaintiff to rely on such an opinion to support his good faith belief. The . . . purpose of the original version of § 52-190a was to prevent frivolous medical malpractice actions." *Dias* v. *Grady*, 292 Conn. 350, 357, 972 A.2d 715 (2009).

[21] Specifically, in 2019, the legislature amended § 52-190a when it enacted No. 19-64, § 16, of the 2019 Public Acts (P.A. 19-64), which is the annual court operations bill. Section 16 of P.A. 19-64 made a minor change to subsection (b), which extends the limitation period upon petition to the clerk of court to allow for the completion of the good faith inquiry, by replacing the phrase "the court where the civil action will be filed," with "any superior court or any federal district court . . . ." That amendment of subsection (b) of § 52-190a pertains only to the extension of the statute of limitations for purposes of the good faith inquiry, which is a provision that preexisted the enactment of the opinion letter requirement in 2005. Moreover, there is no recorded legislative history with respect to the enactment of § 16 of P.A. 19-64 that could potentially indicate any relationship between the opinion letter requirement and the 2019 amendment of § 52-190a (b).

[22] Jurisdiction aside, for purposes of authoring an opinion letter, this court observed in *Bennett* that "strictly adhering to the legislature's articulation of who is a similar health care provider may be harsh to would-be plaintiffs, but [it] is not absurd or unworkable. . . . Specifically, the text of the related statutes and the legislative history support the . . . determination that, unlike § 52-184c (d), which allows for some subjectivity as it gives the trial court discretion in determining whether an expert may testify, § 52-190a establishes objective criteria, not subject to the exercise of discretion, making the prelitigation requirements more definitive and uniform and, therefore, not as dependent on an attorney or self-represented party's subjective assessment of an expert's opinion and qualifications." (Citation omitted; internal quotation marks omitted.) *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 21.

[23] See, e.g., *Peters* v. *United Community & Family Services, Inc.*, 182 Conn. App. 688, 689–90, 690 n.1, 191 A.3d 195 (2018) ("extensive litigation since [the] enactment" of opinion letter requirement has resulted in "[a] computer search for Connecticut cases citing § 52-190a yield[ing] almost [one] thousand results").

[24] By way of background, we go beyond procedure and briefly discuss the series of cases expanding on *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 1, insofar as their explication of what the opinion letter must include substantively governs the motion to dismiss and illustrates the potential pitfalls in complying with the statute. This line of cases is significant because it demonstrates the numerous substantive reasons that might result in dismissal under § 52-190a.

First, to ensure that the plaintiff has complied with § 52-190a (a) by procuring an opinion authored by a "similar health care provider," the

Appellate Court has held that the opinion letter must include "adequate information that could be used to determine whether the author is a similar health care provider," such as his or her professional qualifications. *Lucisano* v. *Bisson*, 132 Conn. App. 459, 466–67, 34 A.3d 983 (2011); see *Bell* v. *Hospital of Saint Raphael*, 133 Conn. App. 548, 561 n.6, 36 A.3d 297 (2012) (declining "to require that the letter 'contain a complete exposition of the health care provider's bona fides,' but [requiring] merely that it disclose that the health care provider possesses the qualifications set forth in § 52-184c"). We note that the trial lawyers specifically ask us to overrule the *Lucisano* line of cases as inconsistent with the text of § 52-190a (a); we leave this request for another day in a case in which the issue is squarely presented by the parties. See, e.g., *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 550–51 n.35, 93 A.3d 1142 (2014).

Turning to the specifications of negligence, we note that an opinion letter complies with "the 'detailed basis' requirement of § 52-190a (a) if it sets forth the basis of the similar health care provider's opinion that there appears to be evidence of medical negligence by express reference to what the defendant did or failed to do to breach the applicable standard of care. In other words, the written opinion must state the similar health care provider's opinion as to the applicable standard of care, the fact that the standard of care was breached, and the factual basis of the similar health care provider's conclusion concerning the breach of the standard of care" because "a blanket requirement mandating a more onerous or stringent standard would serve to deter not only frivolous lawsuits but some meritorious ones, as well, a result that the legislature did not intend to achieve." *Wilcox* v. *Schwartz*, 303 Conn. 630, 643–44, 37 A.3d 133 (2012); see *Dias* v. *Grady*, 292 Conn. 350, 359, 972 A.2d 715 (2009) (concluding that "the phrase 'medical negligence,' as used in § 52-190a (a)," requires only that author explain breach of standard of care and does not require author to opine as to causation).

Finally, the Appellate Court more recently explained the extent to which a plaintiff must undertake a "reasonable inquiry" into the credentials of the defendant health care provider to secure the appropriate similar health care provider to author the opinion letter. See *Doyle* v. *Aspen Dental of Southern CT, PC*, 179 Conn. App. 485, 497, 179 A.3d 249 (2018). In concluding that a general dentist could not author a letter against an oral and maxillofacial surgeon, the Appellate Court rejected the plaintiff's reliance on the defendant's profile on the Department of Public Health website, which did not indicate the defendant's board certification, and her argument that "there was no authentic public record by which to determine or verify that [the defendant] had training as an oral and maxillofacial surgeon and she could verify only that the defendant was a licensed general dentist." (Internal quotation marks omitted.) Id., 494; see id., 494–95. The Appellate Court held that "a reasonable inquiry as permitted by the circumstances" would go beyond the department's website to "other methods for ascertaining a defendant health care provider's credentials," such as simply asking the defendant or his employer, or filing an independent action for a bill of discovery. (Emphasis omitted; internal quotation marks omitted.) Id., 496–97.

[25] Because it would have been time barred in any event, the Appellate Court deemed it unnecessary to reach the plaintiff's broader attempt in *Peters* "to establish that the use of an explanatory or supplemental affidavit to cure a defect in an opinion letter in response to a motion to dismiss comports with language in Practice Book § 10-31 (a) permitting supporting affidavits to establish facts necessary for the adjudication of the motion to dismiss." *Peters* v. *United Community & Family Services, Inc.*, supra, 182 Conn. App. 704; see id., 703–704 (observing that "certain Superior Court decisions provide some authority for permitting a plaintiff to cure a defective opinion letter by [a] supplemental affidavit rather than by following the amendment procedures set forth in Practice Book §§ 10-59 and 10-60").

[26] The trial court in *Kissel* had denied the 2012 motion to dismiss, following dictum from the Appellate Court's 2009 decision in *Votre* v. *County Obstetrics & Gynecology Group, P.C.*, supra, 113 Conn. App. 585, and determining that it had the discretion to permit the plaintiff to amend her complaint to include the opinion letter given the unchallenged attestations of the plaintiff's attorney that the letter existed prior to the commencement of the action, with the failure to attach it to the complaint having been an "oversight." *Kissel* v. *Center for Women's Health, P.C.*, supra, 205 Conn. App. 408; see id., 407–409.

[27] Swinging for the fences, the trial lawyers also challenge several aspects of *Bennett* v. *New Milford Hospital, Inc.*, supra, 300 Conn. 1, as inconsistent

with the focus of § 52-190a on "good faith" and "reasonableness," in particular focusing on (1) the difficulty of obtaining an exact match in credentials between the defendant and authoring health care providers, given the multiplicity of overlapping medical specialties, and (2) the extent to which dismissal is, or should be, the mandatory remedy for failure to supply a compliant opinion letter. As with their challenge to the Appellate Court's decision in *Lucisano* v. *Bisson*, 132 Conn. App. 459, 466–67, 34 A.3d 983 (2011); see footnote 24 of this opinion; we leave these arguments about *Bennett* for another day.

[28] If a defendant intends to raise the issue whether the plaintiff acted in good faith with respect to the selection of the similar health care provider for purposes of the opinion letter, that topic may be taken up at the conclusion of discovery, as § 52-190a (a) has provided both before and after the addition of the opinion letter requirement in 2005. See General Statutes § 52-190a (a); see also *LeConche* v. *Elligers*, supra, 215 Conn. 708 ("The statute . . . clearly requires a factual inquiry by the court regarding the sufficiency of the precomplaint investigation. That inquiry is to be undertaken after the completion of discovery.").

[29] Practice Book § 10-6 provides that a motion to dismiss shall be filed after the complaint, and Practice Book § 10-7 provides that, unless otherwise ordered by the court, "the filing of any pleading provided for by [Practice Book § 10-6] will waive the right to file any pleading which might have been filed in due order and which precedes it in the order of pleading provided in that section."

[30] To the extent that additional elaboration may be helpful as to more specific procedures governing motions to dismiss under § 52-190a, the legislature is free to provide such guidance, as it has done in similar contexts. See General Statutes § 52-196a (c), (d) and (e) (prescribing procedure for special motion to dismiss under anti-SLAPP statute, including thirty day extendable deadline for motion, stay of discovery upon filing of motion, and expedited hearing and decision procedure). Thus, the legislature, along with the Rules Committee of the Superior Court, remains best suited to consider the views of the relevant stakeholders as to the resolution of any remaining procedural lacunae or ambiguities with respect to § 52-190a. See, e.g., *Newland* v. *Commissioner of Correction*, 322 Conn. 664, 686 n.7, 142 A.3d 1095 (2016); *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 550, 93 A.3d 1142 (2014).

[31] The plaintiff argues that the term "holds himself out as a specialist," as used in § 52-184c (c), is undefined and a question of fact. The plaintiff emphasizes that "[h]ealth care providers [who] attempt to present their continuing education coursework as particularized training, as . . . Daar did, should be deemed to have held themselves out as specialists, rather than those [who] simply adhere to their professional responsibilities."

[32] The complaint avers: "One of the most common endodontic treatments is root canal therapy, a procedure [that] effectively eases the pain associated with a bacterial infection deep within the pulp of the tooth. Of course, root canal treatment doesn't just relieve pain—it also stops the infection by removing dead and dying tissue from the tooth's pulp. Plus, it helps to save the tooth, which is in danger of being lost if left untreated." (Internal quotation marks omitted.)

[33] We disagree with the defendants' claim that the opinion letter itself is inadequate because Solomon's statement that he " 'received [his] specialty [b]oards in [e]ndodontics in 1970' . . . does not lead to the conclusion that the author is *American board* certified in the specialty of endodontics." (Citation omitted; emphasis in original.) They contend that the "reference to *plural* 'specialty [b]oards in [e]ndodontics' also is indeterminate and ambiguous. There simply is no way for a court to determine from the opinion letters attached to the complaint whether [Solomon's] reference to 'specialty [b]oards' included board certification by the American Board of Endodontics . . . [or] any basis to find that [Solomon] had maintained his board certification since it was obtained in 1970." (Emphasis in original.) They further argue that, although Solomon adequately stated that he "teaches endodontics, there is no specific information as to his training in the specialty of endodontics," citing General Statutes § 20-106a, which governs when a Connecticut licensed dentist may designate himself or herself as a specialist. See footnote 9 of this opinion. We disagree. Although the plaintiff likely would have benefited had Solomon stated his qualifications more specifically in the opinion letter, Solomon's failure to use talismanic words does not preclude us from reading it broadly and realistically—given his statements about receiving his specialty boards and academic career teaching endodon-

tics—to deem him the requisite similar health care provider.

---